## APPEAL OF AMELIA S. MORGAN, ET AL.

[ESTATE OF GEORGE P. MORGAN, DECEASED.]

FROM THE DECREE OF THE ORPHANS' COURT OF BLAIR COUNTY.

Argued April 22, 1889—Decided May 20, 1889.

The purchaser of a non-negotiable instrument, such as a mortgage, is bound to make inquiry of the maker or mortgagor before purchasing,

and is chargeable with notice of any defence by way of payment, or growing out of the equities of the parties to the instrument, which inquiry would have brought to his notice.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and MC-COLLUM, JJ.

No. 89 July Term 1888, Sup. Ct. ; court below, No. and Term not given.

On November 23, 1885, J. Levan Metzgar presented his petition setting forth in substance that in pursuance of a decree of the Orphans' Court made on July 23, 1874, Amelia S. Morgan, administratrix of George P. Morgan, deceased, had executed and delivered to Edmund Mountney a mortgage on certain real estate of said deceased for the sum of $4,598.38, conditioned for the payment of $2,229.19, on July 23, 1875, which said mortgage had been assigned to the petitioner on December 14, 1874 ; that said administratrix had not paid to the petitioner the amount of said mortgage debt, nor any part thereof ; that no return was ever made by the said administratrix to the Orphans' Court upon the order to mortgage said real estate, and the said mortgage had not been approved or confirmed by said court ; the petitioner praying that the said court would approve and confirm the said mortgage.

To the rule granted upon the foregoing petition, Amelia S. Morgan, administratrix, and Nannie B. Morgan, minor child of said deceased, by her guardian, John Hurd, made answer, alleging that said mortgage had been obtained by the fraud of Edmund Mountney, the mortgagee, some of the averments of the answer being as follows :

" Edmund Mountney was by trade a painter and for a period of nine years prior to the death of George P. Morgan was on terms of intimate friendship with him, and during all that time made his home at the house of said Morgan as a boarder, and was indebted to him for his boarding, and being so indebted, urged and entreated the said George P. Morgan to permit him to build at the actual cost thereof a house upon his lot, the lot of George P. Morgan described in the petition, and that thus he would be able to pay him what he owed him for his boarding. The said Mountney represented that one John Geesey was indebted to him in a large sum of money :

Statement of Facts.

that he was a contractor and builder and that he could the more easily obtain payment of his debt by employing said Geesey to build the said house. George P. Morgan consented and the house was built by said Mountney, or by said Geesey, his debtor, for him, and although the building was not entirely completed at the death of George P. Morgan, yet soon after his death, and whilst it was still not completed, the respondents, Amelia S. Morgan and Nannie B. Morgan, entered into possession thereof, in the month of February, 1874, and the said Mountney, continuing to make his home in the family after the death of George P. Morgan, as a boarder, removed to the said house with them, where still thereafter he continued to board with them until the fall of 1879.

" There never had been a settlement between her husband and Mountney of his boarding, nor was there any such settlement at the date of the pretended mortgage mentioned in the petition, either of the boarding of Mountney before or after the death of George P. Morgan, nor was there at any time any settlement or attempted settlement for the building of the house ; but in April, 1874, Mountney assured her that there was not much due to him for the building of the house and she need not be concerned about it, as he would agree to continue to board with her as formerly, and that whatever balance was due him should be paid in that way. It was accordingly agreed between them that he should continue to board with her in satisfaction of whatever balance might be due, at the rate of twenty dollars per month for boarding, two dollars per month for washing and a reasonable allowance for mending his clothes, and on these terms he continued to board with her and she continued to wash his clothes and mend them, and so furnished and labored for him for the benefit of her daughter, Nannie B. Morgan, that she might have a home free of all debt."

The answer then proceeded to aver that the said administratrix had been induced by the said Mountney to make the application to the court for leave to execute the mortgage ; that he had employed counsel and the petition and other papers had been prepared under his direction, and were based upon statements of fact furnished by him which were untrue.

Testimony having been taken and filed, the court, DEAN, P. J., February 1, 1888, filed an opinion, which was as follows:

On April 27, 1874, Amelia S. Morgan, administratrix of George P. Morgan, late of Altoona, deceased, presented her petition in this court, setting forth that the personal estate of the decedent was insufficient for the payment of his debts, and praying for an order authorizing her to mortgage certain real estate in the city of Altoona for the purpose of raising money to discharge the indebtedness. On the same day the court ordered a decree on her petition, authorizing her to mortgage the real estate described therein, on such terms as she might deem expedient for payment of decedent's debts. She at that date averred an indebtedness on part of the decedent to Ed. Mountney in $2,299.19, which was about the only indebtedness of her intestate, so far as appears from her petition.

On July 23, 1874, she executed a mortgage to Mountney to secure payment of this debt, and Mountney, on December 14, 1874, assigned the mortgage to J. Levan Metzgar. Default having been made in payment, on September 4, 1876, a scire facias was directed to issue, but the administratrix appeared by attorney and waived the issuing and service of writ. On December 27, 1876, the defendant pleaded " never indebted and payment," etc. The case was referred to arbitrators under the compulsory arbitration act, and an award had in favor of plaintiff for $2,440.16. The award was not appealed from within 20 days and became a judgment.

On January 27, 1879, the administratrix, who executed the mortgage and made defence to the scire facias, petitioned the court for an order to sell the mortgaged premises for payment of the mortgaged debt. Before sale was had, however, on March 24, 1879, on petition and affidavit filed, she moved in the Court of Common Pleas to strike off the judgment entered on the award of arbitrators. The court awarded a rule to show cause. On August 28, 1879, the guardian of Nannie B. Morgan, a minor child of decedent, presented his petition and affidavit, praying to be made a party defendant to the judgment, and he was given leave to interplead. After full hearing and argument on this rule, the court, on August 25, 1880, in opinion filed, discharged it.

Then, on January 15, 1881, the administratrix and guardian

filed a bill in equity, setting out the same matters of complaint as averred in the petition and affidavit for the rule to show cause, and praying: (1) That the mortgage be declared null and void, and that it be delivered up for cancellation. (2) That Mountney and his assignee, Metzgar, be restrained by injunction from proceeding to collect it. Preliminary injunction was awarded, and on a motion to continue the same after argument, the court dissolved the injunction and dismissed the bill. From this decree the administratrix and guardian, on May 19, 1883, took an appeal to the Supreme Court. At May Term 1885, the decree of the Common Pleas dismissing the bill was reversed.* ·

The objection to the execution of the judgment most strongly urged on the hearing of the rule to show cause, and on the motion to continue the preliminary injunction, was, that the mortgage on which the judgment was founded, was invalid because it had not been approved and confirmed by the Orphans' Court, which granted the order to mortgage. The Supreme Court sustained this objection so far as Nannie B. Morgan, the minor child, was concerned, and in their opinion in effect decide: (1) That Nannie B. Morgan not having been heard on a motion to approve and confirm the mortgage, a court of equity should hear her on such motion, and if her objections are sustained by proper proof, should interfere to protect her estate from execution on a judgment obtained on the mortgage. (2) That there is nothing in the way of an application by the mortgagee to the Orphans' Court for an approval and confirmation of the mortgage, after notice to all parties interested, and that after hearing on such motion, an adjustment of the equities of the parties could be had. Then comes this motion to approve and confirm the mortgage.

All parties have been fully heard by deposition and argument of counsel. It is alleged that the amount of money specified in the mortgage as having been loaned to the administratrix by Ed. Mountney, is considerably larger than she received. Under the evidence she must be treated as having received whatever amount the estate of her husband was indebted to Mountney. She, in her petition for the order to mortgage, and in the mortgage, distinctly says this amount was $2,299.19.

---

* See Morgan's App., 110 Pa. 271.

Opinion of Court below.

We are satisfied from the evidence adduced that the decedent on a just settlement did not owe this sum. Mountney boarded with George P. Morgan several years before his death; he built a house for Morgan, for which he was to be paid just what it cost him ; this cost, according to Mountney's own statement, was $2,308.85. What amount ought to have been credited to Morgan for boarding ? The minor child alleges a large amount, covering nearly the amount of Mountney's charge for the building, was due and owing. Mountney admits something was owing, but alleges the amount was comparatively small. The testimony on this point is far from definite. From Mountney's own statement the board bill was not taken into account when the amount due to him from the estate was determined on. Very clearly it ought to have been; as it was not, the amount must be ascertained as nearly as possible and allowed now. All the testimony shows that $20 per month in view of the circumstances would be a reasonable rate of payment.

\* \* \* \* \* \* \* \*

He [Mountney] did not then deny that at the time the house was built he owed a considerable sum, and that the boarding debt was created on the understanding that it was to be discharged by building the house. We do not believe that it was as large as the cost of the house, but it is not unreasonable that it should have equalled three years' boarding. Mountney admits he was there three years before Morgan's death. In his testimony first given, where it was alleged in the testimony of Mrs. Morgan that he had not paid, and payment was not exacted because of his promise to build the house, which he did build, he does not contradict her nor attempt to offer any evidence of payment of any part of the board bill.

\* \* \* \* \* \* \* \*

We are of opinion that George P. Morgan at the date of his death owed to Ed. Mountney for building his house ....................... ...$2,299 19

That Ed. Mountney was indebted to George P. Morgan for 36 months' board at the rate of $20 per month .................................720 00

Leaving a balance of .........................$1,579 19

due from the estate of George P. Morgan to said Mountney; that this, by a reasonable construction, should, from the nature of the transaction, be considered as loaned under the order of the court, by Mountney to the administratrix, for payment of debts of decedent, and that said decedent's estate to that amount was benefited thereby.

Therefore, the said mortgage so made by said administratrix to said Mountney, dated July 23, 1874, and recorded same day, is approved and confirmed in the sum of $1,579.19, only, payable as stipulated in said mortgage. This decree to date as if made on the first day of the sitting of the Orphans' Court at October Term 1874.[1]

Thereupon Amelia S. Morgan, as administratrix, etc., and Nannie B. Morgan, by her guardian, took this appeal, specifying in substance that the court erred in entering said decree,[1] in limiting the deduction from the mortgage to three years boarding of the mortgagee, and in sustaining the mortgage at all under the facts and circumstances in evidence.

*Mr. S. S. Blair* (with him *Mr. A. J. Riley*), for the appellants.

*Mr. Daniel J. Neff,* for the appellee.

OPINION, MR. JUSTICE WILLIAMS:

The application to approve the execution of the mortgage by the appellant as administratrix, is one that is addressed to the equity side of the court and must be determined on equitable principles. The question to be considered is, what ought in good conscience to be done upon the facts of this case? If this question was to be settled upon the claims of Mountney, the mortgagee, to the consideration of a chancellor it should be dismissed, for the testimony shows him to have acted in bad faith, and to be entitled at the date of this application to little, if anything, from the estate which the appellant represents. If the bills for board and washing which he owes to the estate and to Mrs. Morgan, were fairly settled and applied on the debt due for the building of the house, it is doubtful whether there would be any of it left. But the equities are to be settled between Metzgar, the assignee of the mortgage, and the appellant.

The assignment of the mortgage by Mountney to Metzgar was made on December 14, 1874, and it passed such right as the assignor then had. A purchaser of a non-negotiable instrument is bound to make inquiry of the maker before purchasing, and is fixed with notice of any defence by way of payment, or growing out of the original equities, which inquiry would have brought to his notice. If Metzgar had inquired of Mrs. Morgan before his purchase, he would have learned of the agreement of Mountney to apply his board bills upon the debt represented by the mortgage as payment pro tanto, and of the agreement that his accruing bills should be applied in like manner. He would also have learned that Mountney had continued to board with her up to that date, and that his bills, though not indorsed upon the mortgage, were a payment upon it. As these facts could have been learned by inquiry, Metzgar must be treated as having knowledge of them when he took an assignment of the mortgage, and the equities between him and the appellant must be settled on that basis.

The court below found that Mountney was indebted for three years' bills unpaid at the date of Morgan's death. The same testimony shows with equal clearness that the bills accruing after that were to be applied to the same debt. The computation should be made, therefore, to the date of the mortgage, instead of to the death of Morgan, and would make the amount then due as follows :—

Alleged cost of house . . . . . . . . . . $2,299 19
Board to date of mortgage,
nearly forty-one months, at
$20 . . . . . . . . . . . . . . . . . $817 00
  Washing do. at $2 . . . . . . . . . 82 00
  Interest . . . . . . . . . . . . . 89 90
                                    —————— 988 90

Due at date of mortgage, if payments had
been properly applied . . . . . . . . . . . $1,310 29

After the date of the mortgage, and before the assignment to Metzgar, Mrs. Morgan paid to apply upon the mortgage the additional sum of $104, made up of board $94, washing $10, which, by the same general agreement, he was bound to indorse. This should have been indorsed before the assignment, but, as

we have seen, the assignee is fixed with notice of the payment and takes subject to it.

We adopt the general view of this case which the court below seems to have entertained, but we go still farther, as we recognize only the equities of the assignee. We therefore ascertain the amount due when the mortgage was given and confirm and ratify it for that sum; but we find that the further sum of $104 was paid upon it before the assignment and that the assignee had notice of such payment. He must take it, therefore, subject to such payment. The mortgage is therefore ratified, on petition of the assignee, for $1,310.29, subject to an indorsement as of December 14, 1874, of the sum of $104 paid at that date.

> Let the decree of confirmation be amended accordingly.