# Levy *v.* Gilligan, Appellant.

*Judgments—Opening judgments—Assignee—Collateral security —Promissory notes—Assignment of judgment as collateral security—Bona fide holder for value—Fraudulent transaction— Duty to inquire—Evidence—Forgery—Unconscionable bargain.*

1. Where a judgment note is taken as collateral security for a promissory note, and the promissory note together with the judgment entered upon the judgment note is assigned to another, the assignee as a general rule takes the judgment free from all defenses except those which might be set up against the promissory note. There is an exception to this rule, however, where there is a dispute as to the fact of the judgment being collateral to the note, or whether the assignee was an innocent holder for value before maturity, or that no duty rested on the assignee to make inquiry by reason of the undisputed character of the transaction. If the facts are disputed or the transaction is of such a character as to require a prudent man to make inquiry before taking an assignment, the assignee may be chargeable with notice of such defenses as could have been set up between the original parties, which inquiry would have brought to his attention.

2. Upon an application to open a judgment, where the defendant alleges that the note, by virtue of which the judgment was entered, was a forgery, the writing is not of weight in determining the issue, and raises no presumption to be overcome. In such

case the burden of establishing the genuineness of the note is on the plaintiff in the judgment, and where there is clear evidence to sustain the averment that the note was a forgery, the judgment should be opened, notwithstanding such testimony may be contradicted.

3. A judgment entered upon a warrant of attorney contained in a judgment note was opened where it appeared that the judgment note had been given as security for a promissory note executed and delivered by defendant in the judgment to the legal plaintiff, in payment for the lease, furniture and furnishings of a so-called hotel property, in reality a disorderly house; that the total value of everything transferred did not exceed $500.00, although the amount of the promissory note was $6,000.00; that the judgment note was assigned on the following date to a woman who had no money to purchase such a security; that judgment was entered on the note and the record was subsequently marked to the use of the use-plaintiff, who made no inquiry about the character of the transaction, the good faith of the parties or the nature of any defenses which might be interposed, although the circumstances under which the notes were negotiated to him were sufficient to put him upon inquiry as to the nature of the original transaction; that the defendant in the judgment testified that the note was a forgery, and she was corroborated by other witnesses who knew her signature, and by the circumstances of the transaction.

Argued Jan. 16, 1914. Appeal, No. 324, Jan. T., 1913, by defendant, from judgment of C. P. No. 4, Philadelphia Co., June T., 1912, No. 3124, discharging rule to open judgment in the case of Sadie Levy to the use of Rose Levinson to the use of David E. Simon v. Elizabeth Gilligan. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Rule to open judgment. Before AUDENRIED, J.
The opinion of the Supreme Court states the case.
The court discharged the rule. Defendant appealed.

*Errors assigned* were various findings of fact of the court and the discharge of the rule.

*V. Gilpin Robinson,* with him *Maskell Ewing, Jr.,* and *William A. Pike,* for appellant.

*Stanley Folz,* with him *Leon H. Folz,* for appellee.

OPINION BY MR. JUSTICE ELKIN, February 23, 1914:

This is an appeal from an order discharging the rule to open a judgment which was entered on a warrant of attorney contained in a judgment note. In the background of this litigation is a young woman, left an orphan when fourteen years of age, a wayward young girl at sixteen, the mother of a child born out of wedlock at eighteen, and at twenty-one, if the judgment be sustained, which is the matter in dispute here, the victim of a scheming woman of mature years without conscience or morals. The woman, Levy, was a trader in commercialized vice and kept a house of unsavory reputation as a resort for those who frequented it to indulge in illicit intercourse. The young woman, Gilligan, under the will of her father, was about to come into possession of an estate valued at $30,000.00, and this no doubt quickened the efforts of the older woman who had been scheming to get part of it when the young woman arrived at the age of twenty-one, at which time the trust estate terminated and the beneficiary took possession. The scheme has all the earmarks of deceit, collusion and fraud. The plan was to sell the lease, furniture and furnishings of the so-called hotel property to appellant for $6,000.00. The evidence shows that the total value of everything included in the alleged bill of sale would not exceed $500.00, and perhaps was not worth half that amount. Two notes were taken to secure payment of the purchase price, one a judgment note upon which the judgment in controversy was entered, and the other a promissory note in the same amount, due in sixty days, and both notes intended as a security for the same debt. This is rather remarkable because one would not expect two women unlearned in the law to know the legal effect of such securities, nor would they likely take such unusual precautions if the transaction were an honest one. The dates are also significant. The judgment note is dated

July 9, 1912, and the very next day it was assigned to
Rose Levinson, who admits that she had no money to
purchase the securities. Judgment was entered on this
note July 12, 1912, and the record was marked to the
use of Simon, the present use-plaintiff, July 31, 1912,
but the exact date when he purchased the securities does
not appear. The evidence clearly shows that the woman,
Levy, had nothing to sell worth $6,000.00; that Rose
Levinson, who took an assignment of the judgment note
the day after it was alleged to have been made, paid
nothing for it; and that the present use-plaintiff made
no inquiry about the character of the transaction, the
good faith of the parties, or the nature of the defenses
which might be interposed. He did ask counsel, who
seems to have represented Simon as well as Rose Levin-
son in this matter, for a declaration of no set-off but this
was never furnished, nor was appellant asked at any
time by any one for such a certificate. It was an idle
thing for Simon to ask Rose, who at no time represented
Elizabeth Gilligan, for a declaration of no set-off, and
certainly he cannot rely on anything said by Rose to
excuse his failure to make inquiry of the defendant in
the judgment, if under all the facts and circumstances,
it was his duty to make such inquiry. If he had made
inquiry concerning the parties themselves, or of the na-
ture of the transaction, or of the character of the people
involved, he would have learned the true situation, and
with this knowledge, no honest man would have made
such an investment. His contention is that he is an
innocent purchaser for value before maturity without
notice of the fraudulent transaction, and that the de-
fenses here set up cannot prevail against him.

The general rule is that the assignee of a mortgage,
or judgment, holds it subject to all the equities in favor
of the mortgagor, or judgment debtor, existing at the
time of the assignment: Horstman v. Gerker, 49 Pa.
282; Ashton's App., 73 Pa. 153. The assignee of a mort-
gage, who does not inquire of the mortgagor whether he

has any defense, takes subject to the equities of the mortgagor against the mortgagee: Earnest v. Hoskins, 100 Pa. 551. The same rule applies to judgments. Learned counsel for appellee concede this to be the law, but contend that the doctrine has no application to the case at bar upon the ground that the judgment note was taken as collateral security for the promissory note. In such a case, it is argued, that the assignee of the judgment entered on the warrant of attorney takes the judgment free from all defenses except those which might be set up against the promissory note. As a general proposition of law, recognized in many jurisdictions as well as by text writers, this may be conceded. To this effect is our own case of Welton v. Littlejohn, 163 Pa. 205. But this is an exception to the general rule, and when applied, there should be no dispute as to the fact of the judgment being collateral to the note, or that the assignee was an innocent holder for value before maturity, or that no duty rested upon the assignee to make inquiry by reason of the unusual character of the transaction. If the facts are disputed, or the transaction is of such a character as would require a prudent man to inquire about conditions before taking an assignment, a situation is presented which to say the least makes the rule relied on in the present case of very doubtful application. When the judgment is opened, if a jury should find that Simon was not an innocent holder for value before maturity, or that on account of the unusual character of the transaction he was bound to make inquiry of the maker of the notes before purchasing, he would then be chargeable with notice of such defenses as appellant could have set up as between the original parties, which inquiry would have brought to his notice: Morgan's App., 126 Pa. 500.

A careful reading of the depositions has convinced us that the evidence of fraud in procuring the judgment note, as well as the promissory note, and of the circumstances under which these notes were negotiated to ap-

pellee, is sufficient to require Simon to affirmatively show that he was an innocent purchaser for value without knowledge of the fraudulent transaction: Second National Bank v. Hoffman, 229 Pa. 429. This can only be done by opening the judgment, and when opened, it will be for the jury to pass upon the credibility of witnesses in determining the facts.

We cannot agree with the learned court below that there was no such evidence of forgery as to warrant the submission of this question to the jury. In this connection it may be observed that in a very recent case it was held that when the genuineness of the note on which judgment was entered is in dispute, and the issue is that of forgery, the writing is not of weight. Its execution is the subject matter of inquiry, and there is no presumption arising from the writing itself to overcome it. In such a case the burden of establishing the genuineness of the note is on the plaintiff in the judgment: Boyd v. Kirch, 234 Pa. 432. The facts of that case are no stronger than those in the case at bar, but both the court below and here decided that the question of forgery should be submitted to the jury. In that case, as in this, defendant testified that he had not signed the note on which the judgment was entered, and that he was not indebted to the plaintiff in any amount. He was corroborated by two witnesses who were familiar with his handwriting and knew his signature. The same is true of the present case, and in addition there is the positive evidence of three witnesses that the alleged maker could not have been present at the time and place the notes were signed because she was at that exact time in another part of the city with her friends. It is true this testimony was contradicted, but if believed, it was a good defense and defeats the right to recover on the notes. In this connection the testimony of the notary public, Aarons, is very significant. Although called in by Mrs. Levy to take the acknowledgment of some papers connected with the transaction, he did not see

Elizabeth Gilligan sign the notes and so testifies in the most positive way. As to the signing of the notes his testimony is as follows: "The notes that were given for the payment and the notes then—I had not seen them before—were put on the table, pushed over to me by Mrs. Levy, who said those were the notes that covered it, and I noticed they had already been signed, and she told me they had been signed before I got there." The testimony of the notary is strongly relied on by appellee, and yet this witness, whose character and official seal were intended by those who perpetrated the fraud to give solemnity and finality to the schemes of Mrs. Levy, did not see the notes signed and could not testify that Elizabeth Gilligan executed them in his presence, or that she acknowledged the signatures to the notes to be in her handwriting. Mrs. Levy had the notes signed before he got there and pushed them across the table to the notary with the information that they had already been signed. Why all this, if Elizabeth Gilligan was there in person to sign the notes and other papers in good faith, and to close out an honest transaction in the presence of an officer of the law?

The evidence contained in this record has all the elements of gross fraud, collusion and perjury, and surely in such a case it is the province of the jury to determine who is telling the truth, and to ascertain the facts upon which the rights of the parties depend. It may be that Simon had no knowledge of the fraudulent transaction, but even conceding this to be the fact, we are all of opinion that, under the facts and circumstances disclosed by this record, it was his duty to make inquiry as to the bona fides of the transaction before purchasing the notes, if he desired to protect himself against such equities and defenses as appellant could lawfully set up in an action between the original parties.

As to the good faith of Mrs. Levy in making the alleged sale, it is suggested by learned counsel for appellee, that the good will of a going business was involved,

and that this was an element of great value to be considered in passing upon the unconscionable and fraudulent character of the transaction. It is a sufficient answer to say that the good will of the keeper of a bawdy house has no value which the law recognizes.

We do not feel called upon to discuss each of the numerous assignments of error, nor the many interesting questions of law presented by learned counsel on both sides of the case. What we do decide is that the judgment should be opened so that a defense can be made upon the merits, and that the evidence is sufficient to carry the case to the jury. ·

Order discharging the rule to open the judgment reversed, rule reinstated and made absolute, and record remitted with a procedendo.