## White, Appellant, *v.* White.

*Judgments—Judgment notes—Confessed judgments — Opening of judgments—Judicial discretion.*

The opening of a confessed judgment entered upon a judgment note was not an improper exercise of judicial discretion, where the judgment defendant, who was eighty-four years of age, and of enfeebled intellect on the date of the note, and who admittedly was never indebted to the judgment plaintiff, his grandson, denied that he executed or delivered the note, and where from the plaintiff's case a doubt was raised as to the bona fides of the transaction by reason of the fact that the note had been filled up by plaintiff, and signed by defendant in an open field, under circumstances of inconvenience, and witnessed at plaintiff's request by a stranger to defendant, although writing facilities and witnesses known to defendant were within easy reach. The fact that defendant did not deny that the signature was in his handwriting, was not, under the circumstances, conclusive against his right to have the judgment opened.

Argued Oct. 6, 1914. Appeal, No. 31, Oct. T., 1913, by plaintiff, from order of C. P. Lawrence Co., Sept. T., 1906, No. 221, opening judgment in case of Jay Crawford White v. Joseph S. White. Before FELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Appeal dismissed.

Rule to open judgment. Before PORTER, P. J.
The opinion of the Supreme Court states the facts.

The court opened the judgment.   The judgment plaintiff appealed.

*Error assigned* was in opening the judgment.

*Jas. A. Chambers,* with him *W. D. Wallace,* for appellant.

*Robert K. Aiken,* with him, *J. Norman Martin,* for appellee.

OPINION BY MR. JUSTICE BROWN, January 2, 1915:

On August 25, 1906, the appellant entered a judgment for $6,000 against his grandfather, Joseph S. White. It was entered on a warrant of attorney in a note for that amount, dated September 16, 1904, payable one year after date, and bearing the signature of the said Joseph S. White. On July 19, 1910, the defendant in the judgment presented his petition to the court below, asking that it be opened, for the reason that he had not executed and delivered the said note to the appellant and had not authorized any one to do so for him. The rule to show cause why the judgment should not be opened was subsequently made absolute, and this was followed by the appeal before us.

It is most earnestly urged that, inasmuch as Joseph S. White, who died since the judgment was opened, did not deny, when his deposition was taken, that the signature to the note was in his handwriting, and the appellant and a subscribing witness testified to his execution and delivery of the obligation, the court erred in opening the judgment. If nothing else appeared in the case, this would undoubtedly be true, but in a recital of the facts appearing in the depositions—some of them in the testimony of the appellant himself—there is found justification for the action of the court in granting the relief prayed for.

At the time the appellant says his grandfather gave

him the note for $6,000 the former was twenty-one years of age and the latter eighty-four. The grandfather had been somewhat enfeebled in mind since 1902, and in the interval J. Crawford White, his son, the father of the appellant, had transacted business for him. It is not pretended that the grandfather owed the grandson $6,-000, and it does not appear from the testimony that he was indebted to the latter in any amount. The grandfather testified that neither in 1904 nor at any other time was he indebted to the appellant in any sum, and the latter failed to show that he ever had a valid claim against him. His explanation of how he happened to get the note was that, before he was of age, he had done some little work for his grandfather. In his own words, he "used to ride the horses to cultivate the corn and help to get in the hay during harvest, and do little chores around." He said that, in recognition of this, his grandfather first talked about deeding some land to him, but subsequently changed his mind and executed and delivered the note instead. The appellant admits that he never—not even in his grandfather's house nor in his own home—spoke to any member of either family of the deed he was to get from his grandfather. This is a peculiar feature of the case to which the learned court below called attention in its opinion directing the judgment to be opened. But what, after all, must have led it to the conclusion that the execution and delivery of the note were questions for the jury was the appellant's own testimony as to the circumstances under which he received the obligation. He said that on September 16, 1904, an attorney, now deceased, filled up and gave him the note in question; that he put it in his pocket and the next afternoon went to see his grandfather; that the grandfather was in the yard, but went into the house, saying he would be out in a minute; that he did not return for some minutes, and appellant went in to see what was keeping him; that he said nothing to his grandfather, either in the yard or in the house, as to the object of his visit;

that his grandfather and he left the house and went to the property that the grandfather thought of deeding to him; that the grandfather finally said he would not let any of the land go, but would rather sign a note; that he then handed his grandfather the note drawn up by the attorney, and, after reading it, the grandfather signed it in the field; that he did so by stooping down and placing the note on his knee, using a fountain pen furnished by the appellant; that, wishing to have some-one witness his grandfather's signature, he called to a person passing along the road, whom he knew only by sight, to come into the field to witness it. All this was done with Shoaff's store just across the road, where it would seem that the parties would naturally have gone for facilities in executing the note and to procure a witness. The witness called from the highway—a young man about seventeen years of age—said that he did not know the appellant; that he was of a wandering disposition, having no particular place as his home, and that when he was on the highway he heard the appellant call, "Come over here. I want you to witness a note." If the appellant felt that he ought to have a witness to the execution of the note, why did he call this apparent stranger? Though he did not know the appellant at the time he went into the field, they seem to have shortly afterwards become quite boon companions. According to the testimony of Headings, the subscribing witness, as soon as the note was signed he and the appellant left the field together and went on up the road, the old man returning to his home. When, in connection with the peculiar circumstances under which the note was signed, as testified to by the appellant and Headings, there is taken into consideration the unqualified statement of the old man, that he never executed and delivered it to the appellant, and that, as soon as he learned that judgment had been entered on it, he took steps to have the same opened, the mere fact that he could not explain his signature to the obligation was not conclusive against

him, and the learned court below correctly so held. "An application to open a judgment entered on a warrant of attorney is addressed to the equitable powers of the court and on appeal the question is whether there has been a rightful exercise of discretion. The measure of proof required to send a case to a jury cannot be defined by rule": Kaier Co. v. O'Brien, 202 Pa. 153; and "while a judgment should not be opened, as a general rule, upon the oath of the defendant alone when he is contradicted by the testimony of the plaintiff, yet where there are corroborating circumstances, or circumstances from which inferences may be drawn corroborative of the defendant, it is usual to open the judgment and refer the questions to a jury." Stockwell v. Webster, 160 Pa. 473. In view of all the testimony before us, we are of opinion that the court below did not abuse its equitable discretion in opening the judgment, and approve the following from its opinion in doing so: "The plaintiff says that upon the day the note was executed he went to the defendant's home and found him in the yard; that they spoke, and the grandfather said he would be out in a minute and then went into the house. After he had been in the house 10 or 15 minutes the plaintiff went in to see what was keeping him. They then came out of the house and went to the property that had been talked about. Nothing was said about the note until they started up the road. They then went into the field opposite Shoaff's store to look at the premises; the plaintiff handed the defendant the note that had been prepared and then George Headings, who was then a boy about 17 years old, came along the road and the plaintiff called to him. He came over to where they were and witnessed the signature of the defendant. At that time Headings was unknown to the defendant and scarcely known to the plaintiff. But immediately after the note was signed the plaintiff and Headings started off up the road together and left the old man there in the field. These are the alleged facts as testified to by the plaintiff and Headings.

These alleged facts, in connection with the others in the case, are, to say the least, quite significant. The witness Headings was then a young man about 17 years of age, having no fixed place of abode, but simply drifting around or, as he expresses it, 'I was going where I could take my hat.' The plaintiff and defendant were but a short distance from Shoaff's store from which, as well as from the several houses nearby, no doubt witnesses could have been procured whose standing in the community would have been unquestioned. Although the plaintiff says that he was very slightly acquainted with the witness, yet immediately after the note was signed he went off up the road with this comparative stranger and left his grandfather, whose natural love and affection had prompted him to give him a note for $6,000.00, standing alone in the field. This mere acquaintanceship seems to have soon after developed into comradeship, for within two months afterward the plaintiff and this witness are engaged in coon hunting together. But this transaction out in the field is absolutely denied by the defendant. He says he never saw the subscribing witness and never knew him; that he never executed this note to the plaintiff out in the field or any other place; that he never discussed with his grandson the giving of land or a note—that he did not have much love or affection for this grandson. Thus we have the testimony of the grandfather on the one side and his grandson and Headings on the other......This alleged transaction is surrounded by a degree of secrecy that arouses suspicion as to its bona fides. At no time was the giving of the land discussed in the presence of any one although in the house of the defendant, about which the plaintiff claims to have been so much, were his wife and two daughters. It was claimed by plaintiff that the land in question was discussed in the presence of May (an aunt of plaintiff), but on further examination he admitted that this discussion was with reference to his purchasing some land. Why should he refrain from talking about

it in the grandfather's home, if the old man felt so kindly toward him? Possibly the two aunts would object. Be that as it may why should he conceal it from his own father and mother. They would surely be pleased to know that the grandfather regarded their son with such favor. True, they afterward learned of it but not directly from him, but he says he could not trust his father either, nor his brother. It is very peculiar that this young man, who had been made rich through the beneficence of his grandfather, could find no one in his own family, or that of his grandfather in whom he could confide the good fortune that had befallen him. Under all the facts and circumstances in the case we have no hesitancy in saying that this matter should be submitted to a jury. In cases of this character the court is to judge the weight of the evidence and the credibility of witnesses: Earley's App., 90 Pa. 321. The defendant does not deny that it is his signature to the note but he does deny that he ever executed and delivered this note to the plaintiff. He does not know how the young man ever got the note with his name on it but he is positive that he never gave it to him. If he never gave the note to the plaintiff he should not be required to pay him. He says there were notes about his home with his signature on them but he never gave this one to the plaintiff. Under the testimony in the case a jury should pass upon the questions of fact involved."

Appeal dismissed with costs.