Yank *v.* Eisenberg, Appellant.

Argued May 23, 1962. Before Bell, C. J., Mus-
manno, Jones, Cohen, Eagen and O'Brien, JJ.

*Joseph Rappaport,* with him *Rappaport & Lagakos,* for appellant.

*Maxwell L. Davis,* with him *Herman S. Davis,* and *Davis and Davis,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, June 28, 1962:

On May 25, 1955, a judgment by confession under a warrant of attorney was entered in Court of Common Pleas No. 6 of Philadelphia County upon a $10,-000 note dated May 18, 1955, payable to David Yank (Yank) and purporting to have been signed by Jacob Eisenberg and Bessie Eisenberg, his wife.

On May 11, 1960 Yank issued a sci. fa. to revive this judgment. Thereafter, Jacob Eisenberg and Bessie Eisenberg each filed a separate petition to show cause why this judgment should not be opened. To both petitions Yank filed answers and, after the taking of depositions by the parties, the matter came before Judge F. X. McCLANAGHAN who entered an order refusing to open the judgment as to either Jacob Eisenberg or Bessie Eisenberg. From that order Bessie Eisenberg alone appeals.

The basic question on this appeal is whether the court below erred in refusing to open the judgment as to Bessie Eisenberg where she denies that she executed the note and there is no direct proof or any expert testimony as to the genuineness of her signature on the note.

Yank's position is that, through the intervention of his brother, Bernard Yank, he advanced $10,000 to Eisenbergs for use in a corporate business known as Royal Shoe Market, Inc., a corporation of which Jacob Eisenberg was president and Bessie Eisenberg the largest stockholder, and that he received a note in the amount of $10,000 containing a warrant for the con-

fession of judgment which bore the signatures of Jacob Eisenberg and Bessie Eisenberg. Bessie Eisenberg's position is that she did not sign this note, did not authorize anyone to sign it on her behalf and did not know of the existence of the note until the institution of proceedings to revive the judgment entered on the note. While Jacob Eisenberg took no appeal to this court his position in the court below must be noted: over a period of ten years prior to 1955, Jacob Eisenberg weekly engaged in gambling with a group of men, including Bernard Yank; that his losses became severe and, from time to time, he borrowed money from Bernard Yank; in May, 1955, when Jacob Eisenberg owed approximately $10,000, Bernard Yank induced his brother, David Yank, to advance this money and, in return, a note, signed by Jacob Eisenberg and to which Jacob Eisenberg had, without authority, affixed his wife's signature, was given to Yank.

In support of Bessie Eisenberg's position only she and her husband testified. Mrs. Eisenberg testified that she had not signed the note, that the signature on the note was not her signature and that she did not know of the existence of the note until after institution of the proceedings to revive the judgment. Jacob Eisenberg testified that he did sign the note but that his wife did not sign the note, her signature having been affixed by him without her knowledge or authority. On cross-examination, Jacob Eisenberg's attention was directed to testimony which he had given in September, 1955 in connection with the bankruptcy proceedings of Royal Shoe Market, Inc. At that time, Jacob Eisenberg had testified that Yank had loaned him and his wife $10,000 in connection with the business and "we gave him a judgment signed by both of us" as collateral for that loan.

On behalf of Yank three witnesses appeared; Yank, Bernard Yank and Irving Levine. Yank testified that,

after a conversation with Bernard Yank, he gave him $10,000 to advance to the Eisenbergs for a purpose unknown to him, the entire transaction being in the hands of Bernard Yank. Bernard Yank testified that Jacob Eisenberg requested a loan of $10,000, that he went to his brother, Yank, and over a period of time secured advances of money finally amounting in May 1955 to $10,000 which he gave to Jacob Eisenberg and, at the time of payment of the final advance, gave him a note to have signed by himself and his wife. On May 18, 1955 Jacob Eisenberg gave Bernard Yank the note in question bearing the signatures of Jacob Eisenberg and Bessie Eisenberg together with a letter addressed to Yank: "Enclosed please find our note for $10,000 with six per cent interest signed by my wife and me" signed "Jacob Eisenberg." Bernard Yank further testified to an incident which he claimed took place at Eisenbergs' Atlantic City home after the execution of the note and the advancement of the money; on that occasion, in the presence of Irving Levine and Jacob Eisenberg, Mrs. Eisenberg stated to Bernard Yank "I will never forget you as long as you live for what you did for us" and, upon Levine's inquiry as to what she meant, Bernard Yank stated "Oh, I lent Jake $10,-000." Irving Levine was called to corroborate Bernard Yank as to this incident; he stated that he "passed a remark saying that [Bessie Eisenberg] did not have to treat [Bernard Yank] so good and she says that he did so much for them, he loaned them $10,000 when they needed it and she appreciates it and says she will never forget as long as she lives."

It is to be noted that there is no testimony whatsoever that the signature "Bessie Eisenberg" on the note is the genuine signature of Bessie Eisenberg. On the other hand, there is the testimony of both Eisenbergs that Bessie Eisenberg did not sign the note, although Jacob Eisenberg's testimony in this respect is

seriously weakened by his previous testimony in the bankruptcy proceeding and the letter of May 18, 1955.

In this area of the law certain principles are well settled: (1) "Courts are not required to open a judgment merely because testimony offered by the defendant would, if true, constitute a defense, nor will the appellate court reverse the action of the court below in opening or refusing to open a judgment on conflicting testimony unless there has been a clear abuse of discretionary power [citing a case]. Cases where forgery is alleged furnish no exception to this principle . . . .": *St. Clair S. & T. Co. v. Hahne,* 345 Pa. 420, 422, 29 A. 2d 21; (2) where a judgment entered on a note is attacked on the ground that a signature to the note has been forged, the note itself is of no weight and from its existence no presumption of valid execution arises (*C. D. Kaier Co., Ltd. v. O'Brien,* 202 Pa. 153, 160, 51 A. 760; *Boyd v. Kirch,* 234 Pa. 432, 434, 83 A. 366; *Levy v. Gilligan,* 244 Pa. 272, 277, 90 A. 647; *Austen v. Marzolf,* 294 Pa. 226, 228, 143 A. 908; *Mutual B. & L. Ass'n. v. Walukiewicz,* 322 Pa. 240, 242, 185 A. 648); (3) there is no inflexible rule requiring the opening of a judgment upon an averment that the instrument upon which the judgment is entered was forged (*St. Clair S. & T. Co. v. Hahne,* supra, 422; *Mutual B. & L. Ass'n. v. Walukiewicz,* supra, 242. But cf. *Boyd v. Kirch,* supra, 434; *Schomaker v. Dean,* 201 Pa. 439, 441, 50 A. 923); (4) where forgery is averred as the ground for opening a judgment it is the burden of the holder of the judgment to prove the genuineness of the signature or signatures (*Boyd v. Kirch,* supra, 434; *Levy v. Gilligan,* supra, 277; *Mutual B. & L. Ass'n. v. Walukiewicz,* supra, 242).

In the light of these principles the instant record has been examined. It was clearly the burden of Yank to prove that the signature "Bessie Eisenberg" on the note was a genuine signature of Bessie Eisenberg. That

burden has not been met. There is not a scintilla of evidence, either by way of substantive proof or expert testimony, that Bessie Eisenberg actually signed this note or that the note was signed by someone authorized to do so on her behalf. The testimony of Jacob Eisenberg at the bankruptcy proceeding and the contents of the letter of May 18, 1955 do not supply such proof, particularly in view of his deposition that he, not Bessie Eisenberg, signed her name to this note. Under the instant factual situation Yank did not meet the burden of proof imposed upon him to prove the genuineness of the signature of Bessie Eisenberg and the court below in refusing to open the judgment abused its discretion.*

Order discharging the rule to open judgment as to Bessie Eisenberg is reversed and the rule made absolute. Costs to abide the event.

---

* As stated by Justice (later Chief Justice) KEPHART in *Mielcuszny et ux. v. Rosol*, 317 Pa. 91, 93, 94, 176 A. 236: "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied . . . discretion is abused."