## Johnstown School Employees Federal Credit Union v. Mock

*S. R. DiFrancesco, Jr.*, for plaintiff.

*Thomas A. Young*, for defendants.

McDONALD, J., May 22, 1969.—This matter is before the court on a petition to open judgment entered against petitioner (herein referred to as defendant) and her estranged husband, Thomas J. Mock. The husband, an employe of Johnstown School District, on October 11, 1964, applied to plaintiff, Johnstown School Employees Federal Credit Union, for a loan in the amount of $3,195.52. Previous loans had been made to him, and paid by deduction from his wages. Since the amount of the loan applied for was in excess of $750, plaintiff required the note be signed by the applicant husband and the wife defendant. In addition, the title of a 1961 automobile

owned by the parties was turned over to plaintiff by the husband, and it is still in its possession.

At the time the loan application was made, the note was given to the husband for both signatures. It was returned signed by him and a signature purporting to be that of defendant. Plaintiff thereupon gave a check to the husband, payable to him only, and when returned by the bank his name was endorsed on it.

Husband later terminated his employment with the school district, and when payments by wage assignment stopped, judgment on the confession clause in the note was entered February 1, 1965, against both husband and defendant. In August, 1965, payments not having been made for several months, plaintiff's treasurer and general manager, Donald B. Irwin, talked to defendant by telephone and advised her of the judgment. At that time, husband and defendant were having marital difficulties which subsequently resulted in a permanent separation in October, 1965.

At the time Mr. Irwin called, defendant told him she had not known of the judgment, did not sign the note, had not authorized her husband to sign her name, and received no part of the loan. She then contacted her brother, Donald Hanley, who called Mr. Irwin, giving him the same information. Subsequently, he talked to Mr. Irwin and asked why plaintiff had not taken some action against the husband.

This was one of several notes given to lending institutions and signed by the husband. Defendant denies execution or knowledge of any of them, and so notified the creditors.

During the period October, 1965, when the parties separated, until the present time, there has been a nonsupport proceeding before the court on several occasions. The order of support is presently delin-

quent by over $4,000. It was necessary for defendant to work at times, and during certain periods public assistance was obtained for herself and the four children. She is now employed by Bell Telephone Company.

During the nonsupport proceedings, counsel, upon being advised of the judgment, wrote to plaintiff on June 3, 1966, notifying it petitioner's signature was a forgery, disclaiming liability and advising efforts to collect would be defended for this reason: Exhibit A. Reply to New Matter.

In 1968, petitioner caused prosecution to be brought against her husband for several forgeries, including the one here in issue. No disposition has been made of these.

According to defendant, she was assured on several occasions her husband would "straighten out," his tangled financial affairs, including the judgment in question. She didn't want to get into what she termed "this legal business." Also, because of her lack of money and upon advice of her brother, she did not move earlier to contest the execution of the note.

Mr. Hanley testified that when he was advised of the forgery, he contacted the husband, who was "in trouble with the law in Pittsburgh," and then he called Mr. Irwin and suggested charges be made against him. This suggestion was repeated later. It was his opinion the expense of bringing an action against the husband, or to open judgment, would have been too great, and he so advised defendant. Mr. Hanley notified other creditors of the forgeries and also arranged for the bank holding a mortgage on the home to forego payments, except interest, until financial matters could be adjusted.

At the hearing, defendant denied the signature on the note was hers and testified she had not authorized the note to be signed on her behalf. Her brother,

Mr. Hanley, who was familiar with her signature, testified the signature on the note was a forgery. From a comparison of signatures on the pleadings signed by defendant and that on the note, it is apparent to the hearing judge they are dissimilar.

No testimony was offered by plaintiff to show the signature was that of the defendant.

Mr. Irwin says the value of the automobile, which he had examined at some time when loans were being made to the husband, may have warranted execution against it in 1965, but at this time it has little value. In fact, there is testimony he thought the automobile had sufficient value to secure the loan, but now realizes it did not and that is why he had asked for defendant's signature on the note. He says he chooses to lien the property owned by husband and defendant as tenants by the entireties, as it has greater value.

We are satisfied there is sufficient "clear, direct, precise and convincing evidence" the signature on the note is a forgery to sustain defendant's burden of showing a meritorious defense is available if the judgment is opened: Carlson v. Sherwood, 416 Pa. 286; Sterling Electric & Furniture Co. v. Peterson, 409 Pa. 435. The instrument itself affords no presumption of valid execution, and the burden of proving the genuineness of the signature shifts to plaintiff: Carlson v. Sherwood, supra; Yank v. Eisenberg, 408 Pa. 36; Boyd v. Kirsch, 234 Pa. 432; Sobieski Building & Loan Association v. McGrady, 80 Pa. Superior Ct. 277.

As stated in Austen v. Marzolf, 294 Pa. 226, 229, "Forgery is a heinous crime, which cannot be ratified." Section 3-404 of the Uniform Commercial Code of April 6, 1953, P. L. 3, 12A PS §3-404, provides an unauthorized signature may now be ratified. See Rehrig v. Fortunak, 39 D. & C. 2d 20; Wiest v. National Bank, 10 Lycoming 125. Here, however,

there was no ratification of the note upon which judgment was entered, and in fact, on several occasions, including a letter from a lawyer, defendant denied to plaintiff the genuineness of the signature, disclaimed all knowledge of it, and indicated she did not intend to be bound by it.

Were we to decide whether there was sufficient evidence to submit the issue of forgery to a jury, the judgment would be opened and that defense allowed. However, plaintiff contends defendant has lost her right to question the valid execution of the note because of laches.

Under the decisions in this State there is no inflexible rule requiring the opening of a judgment when it is averred the instrument upon which judgment has been entered is forged: Yank v. Eisenberg, supra; St. Clair Savings & Trust Company v. Hahne, 345 Pa. 420; Mutual Building & Loan Association of Shenandoah v. Walukiecwicz, 322 Pa. 240; Boyd v. Kirsch, supra; Sobieski Building & Loan Association v. McGrady, supra. Whether it should be opened is within the discretion of the court, ". . . after a careful consideration of the character and effect of the testimony": Shannon v. Castner, 21 Pa. Superior Ct. 294.

The power of the court to open a judgment rests on equitable principles. There is no time limit on the exercise of this power, provided the opening is dictated by equity and justice. When, however, the defense of laches is raised, the one seeking to open judgment must show due diligence or an excusable delay and a lack of prejudice if relief is granted.

Defendant has failed to petition the court to open judgment for over three years after she had knowledge it was entered. During this time she was struggling, with the help of her relatives, to raise a family of four children in a mortgaged home, deserted by her hus-

band, overwhelmed by debts, some of which were incurred by her signature forged to loan instruments by her husband. She was without funds, and supported from time to time by public welfare, or by working when she was able to to do so. She had told plaintiff, through its officer, Mr. Irwin, her signature was forged. Her brother had given him this same information on several occasions, and an attorney, who represented her in the nonsupport proceeding, had also written to plaintiff denying the signature and the obligation. She caused prosecution to be brought against her husband for forgery of her signature to the note in question, as well as to others. While she did not promptly move to open judgment, we cannot find, as we must, to recognize the defense of laches, that she impliedly waived her rights and acquiesced in its validity. Her actions, and those of others on her behalf, clearly indicate the contrary.

However, since one is presumed to know the law, and must act diligently to protect his rights, it might very well be said the delay of over three years was unreasonable. We would agree with this position if plaintiff had not been put on notice it held a document the valid execution of which was denied. This is not the case of a person who had knowingly executed an instrument which itself is proof of its genuineness. Here, we have an instrument which, from uncontradicted testimony, is a forgery. Standing alone, with this serious charge against its character, the note is of no weight. As the law considers forgery to be a "heinous crime," is it to be given respectability and integrity by a failure of the one whose name is forged to question its validity within a short time after notice of its existence? In our view, the equities are clearly with one who claims forgery and presents sufficient convincing evidence of this claim, more so than when a note which is validly executed is attacked

for other reasons. Thus, one in this position, in the absence of a waiver, acquiescence or ratification, should not be bound as narrowly by the rules of due diligence, as one who has knowingly executed an instrument upon which judgment was entered. This is not to say, however, if the delay has worked prejudice against the holder without fault on his part, the rules of due diligence do not apply. In such case, one whose delay caused the prejudice, regardless of the merits of the defense, will have to bear the loss.

It seems to us, in a case such as this where forgery is averred, the delay of three years in moving to open is not unreasonable when we consider the circumstances under which the defendant was living during this period, her marital, family and property problems aggravated by a broken home, the assurance of her husband the matter would be taken care of, and the prosecution of her husband. These circumstances and the notice which she gave to plaintiff, and which were given in her behalf, that the validity of the judgment was challenged, indicates she did not stand idly by during the past three years.

It may be said the delay was inexcusable notwithstanding these circumstances, since they were of no concern to plaintiff who was led to believe by the husband the signature was valid. However, in considering the equitable doctrine of laches, we must also examine plaintiff's conduct to determine if in some way it may have aided, not intentionally, but with a certain degree of negligence, the fraud of which defendant claims to be a victim. Plaintiff's officer who processed the loan did not require defendant's signature to be witnessed, nor was the note executed in his presence; and no comparison was made to determine its genuineness. The money advanced on the note was paid to the husband as payee in the check. This all occurred 10 months before defendant

was even told a note existed and judgment had been entered against her. In view of plaintiff's conduct which, unwittingly, but with no less disastrous results, set the stage for forgery, it seems now inequitable to us that defendant should be precluded from showing the fraud, and plaintiff absolved from the burden of proving the genuineness of her signature, merely because she failed to move to open more promptly than she did. Assuming as we must since the evidence of forgery is convincing, if laches prevails, we will, in effect, have given life to a dead instrument.

Plaintiff argues it has been prejudiced by failure of defendant to contest the judgment within a reasonable time. It states it has forsaken proceedings against other assets in the belief it held a valid judgment against defendant's jointly owned real estate. It is difficult to find, in view of defendant's warnings her signature was a forgery and she did not intend to be bound, that plaintiff could, with any confidence, believe it held a valid judgment. However, assuming arguendo it did, the only other asset mentioned in the testimony was a jointly owned automobile, title to which was held by plaintiff. If it had caused execution to issue on this, the defense of forgery could have been raised. No effort was made to show any asset owned jointly, or alone by the husband, was available for execution during the past three years. In our view, plaintiff is in no worse position now, if the judgment is opened, than it would have been in causing execution to issue against any jointly owned asset of defendant and her husband, including the house, at any time during the past three years. Nor are we convinced the court costs are sufficient to support the claim of prejudice. These costs must abide the verdict. In event the verdict favors defendant, the judgment is still valid against the husband, and the costs do not vary.

The Supreme Court has held, in Harris v. Harris, 428 Pa. 473, a judgment note procured by a forged signature is void, and not merely voidable. "A forged signature to a negotiable instrument is void, a nullity, and wholly inoperative": 11 Am. Jur. 2d Bills & Notes, §704, p. 783. The Uniform Commercial Code, supra, §3-404, provides, "1. Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it, or is precluded from denying it; . . ." The term "precluded" is said to be synonymous with estoppel. "Estoppel to set up the defense of forgery or want of authority may arise from any conduct, silence, or laches which misleads a person to his prejudice": 11 Am. Jur. 2d §712, p. 792. Thus, it would appear a judgment obtained by a forged instrument being void, may be attacked at any time since it is a nullity: Peoples National Bank v. Weingartner, 153 Pa. Superior Ct. 40, 44; Haverford Township School District v. Herzog, 314 Pa. 161.

While the broad language of Harris would seem to allow an attack on this judgment because it is void, and this without regard to the passage of time, we are concerned that the language of the Uniform Commercial Code does preserve the defense of laches. However, consistent with equity and justice, and in view of the special treatment in the code of unauthorized or forged signatures, it is evident the law will allow more latitude in permitting the contest of such signatures.

We are satisfied, therefore, and so conclude, under all the circumstances here, the defense of laches is without merit and the judgment will be opened.

## ORDER

Now, May 22, 1969, after hearing and upon consideration of the record and briefs, the rule to show

cause why the judgment should not be opened is made absolute, the judgment is hereby opened and defendant is allowed to defend.