## Henry Christian Building and Loan Association, Appellant, *v.* James Walton.

*Contract—Fraud—Forgery—Ratification.*

Where a transaction is contrary to good faith and the fraud affects individual interests only, ratification is allowed, but where the fraud is of such a character as to involve a crime the adjustment of which is forbidden by public policy, the ratification of the act from which it springs is not permitted.

*Mortgage—Forgery—Ratification.*

On a scire facias sur mortgage, it is not error to charge that if the mortgage upon which the action is founded is a forgery, there can be no ratification of it, because forgery does not admit of ratification.

On a scire facias sur mortgage, it appeared that the defendant applied to a building association for a loan to pay off a ground rent. An accredited agent of the association prepared a mortgage and forged defendant's name to it, and did not pay off the ground rent for which the loan was made. There was no evidence that the defendant had employed the agent of the association as his agent for the purpose of executing the mortgage, and he denied knowledge of its execution; but after the execution of the mortgage, on information that the loan had been secured and the ground rent paid, he made payments to the building and loan association on account of his shares and on account of interest. *Held*, that a verdict and judgment for the defendant should be sustained.

Argued March 24, 1897. Appeal, No. 11, Jan. T., 1897, by plaintiff, from judgment of C. P. No. 1, Phila. Co., March T., 1894, No. 258, on verdict for defendant. Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Scire facias sur mortgage. Before BEITLER, J.

The facts appear by the charge of the court which was as follows:

The plaintiff in this matter is a building association, which is attempting, in this action, to collect from the defendant the balance due upon a mortgage of $1,000, which, in February, 1892, it paid $1,000 for. The defendant denies that he ought to pay the mortgage, alleging that it is a forgery. He has testified here that he did not sign the mortgage—did not put his mark to it—and never authorized anybody to put his mark to it. He has testified that he did not acknowledge it, and that

he never saw it and had no knowledge of it until long after the date which it bears. The building association contends, in the first place, that the circumstances surrounding the case led to the belief that Walton, the defendant, did sign the mortgage, or did execute it by his mark, and in the second place, that even if he did not, his subsequent acts were such as to make the mortgage binding on him whether it was forgery or not— that is to say, whether his mark was put to it by somebody else or not. [I say to you as a matter of law that if you find that the mortgage is a forged instrument, no act of Walton's thereafter could make that mortgage binding on him, the policy of the law being opposed to the ratification of a forgery.] [1] As to the question : Did Walton make this mortgage or not, I am going to review the testimony briefly, and leave that question to you for determination. [Walton, the defendant, attended the meeting of the association in January, 1892, and subscribed for five shares of stock. He bid for a loan on the five shares of stock—that is, he bid for a loan of $1,000. He denies that James E. Magee bid for the loan for him, but Mr. Fay, the secretary, and Mr. Murphy, the solicitor, both swear positively that James E. Magee did bid for that loan for the defendant. Mr. John Magee, the father of James E. Magee, says that previously to the meeting, both the Waltons—father and son— called at the son's house and spoke to both of them about this loan, and asked the son to apply for the loan for him. To my mind, that testimony has more to do with the credibility of the defendant than it has to do with the merits of this controversy otherwise.] [2]

The building association, upon receipt of this application, referred it to the property committee, and the property committee, having satisfied themselves that the property offered was security for the loan when cleared of the ground rent then encumbering it, reported in favor of the loan, and the board of directors approved that report and authorized the officers of the association to make the loan. Subsequently James E. Magee produced the paper here in evidence, and it bearing upon its face evidence of being authentic—that is, being regularly acknowledged before a notary public, Mr. James E. Magee being a notary public, being signed by a mark, and properly describing the property which was offered to the association—the secretary of the

building association drew an order upon the treasurer, in pay-
ment of the face of the mortgage. That order was subsequently
presented by James E. Magee to his father, and the father paid
to James E. Magee nine hundred and eighty odd dollars in a
check to the order of James Walton, deducting a small amount,
some fifteen dollars and odd cents, for dues then due to the
association. [No authority was shown to the treasurer for the
payment of the money to James E. Magee, either as attorney or
agent for Walton, the defendant.] [3]   [At a subseqent meet-
ing, according to the testimony of Mr. Fay and Mr. Murphy—
and they are both positive on this point—Mr. Walton objected
to the payment of a certain sum, stating that when he settled
with James E. Magee, Magee had deducted that particular sum
of money from the sum of money coming to Walton, and that
he ought not to pay that particular sum of money to the asso-
ciation. Those points are proper for your consideration upon
the question as to whether Walton did or did not sign the mort-
gage. They are not proper for your consideration upon the
question of whether they amounted to a ratification of the mort-
gage.] [4]

There is another point to be considered in the case, and that
is this: Walton visited James E. Magee's office some time after-
wards, and Magee informed him that he had secured the money
from the association, and with it he had paid off the ground
rent upon Walton's property. Walton says that in the belief
that the ground rent had been paid off, and that he owed the
money to the association, he went to the association and he paid
for twenty months. He says eighteen months, but the books show
twenty months. He paid regularly his five dollars per month
on five shares, and his five dollars interest per month on a thou-
sand dollars, which would be the regular monthly interest upon
$1,000, at the legal rate of interest. He continued those pay-
ments until August, 1893. August, 1893, is the time when
James E. Magee disappeared. According to Mr. Walton's tes-
timony, August, 1893 is the time when the ground rent land-
lord sent him the first bill he had received since January, 1892,
for ground rent upon the property described in the mortgage.
Then ascertaining, upon the receipt of that bill for ground rent
amounting to $81.00 for eighteen months, that Mr. James E.
Magee had not paid off the ground rent, he made inquiries and

ascertained that the ground rent had not been paid, and his counsel, taking a look at the mortgage, discovered that it was a forgery, and that he then, for the first time, learned that his property was encumbered by a mortgage to the building association.

All those things are proper for you to consider when you come to decide whether Mr. Walton did or did not execute that mortgage. In addition, it is proper for you to consider that in his testimony he says he never, since he was twelve years of age, executed a paper by his mark, but that he was able to sign his name, and has invariably done so; and he produces quite a number of papers which corroborate the view that he can and does sign his name to papers.

On the other hand John Magee produces a judgment note signed by a mark. While there is no evidence to show that James Walton did affix his mark to that note, he admitted, according to the testimony of John Magee, that he did owe that amount of money to James E. Magee, and that he had given a judgment note for it.

All these questions are questions of fact for you to consider. [The one question for your determination is : Was that mortgage a forgery, or was it signed by Mr. Walton ? If it was signed by Mr. Walton, your verdict will be for the plaintiff ; if it was a forgery, your verdict must be for the defendant.] [5]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (1–5) above instructions, quoting them.

*Joseph P. McCullen*, with him *John T. Murphy*, for appellants.—Having received notice of the payment of the money, it was the duty of Walton to see to the extinguishment of the ground rent, and having received notice of the payment of the money, and having made payments on account of the indebtedness in accordance with the terms of the mortgage, he cannot now repudiate the debt and deny the instrument executed by his agent merely as a security for the debt : Garrett v. Gonter, 42 Pa. 143 ; Forsyth v. Day, 46 Me. 176 ; Bank v. Keene, 53 Me. 103 ; Wellington v. Jackson, 121 Mass. 157 ; Buck v. Wood, 85 Me. 204 ; Tryon v. Munson, 77 Pa. 250 ; Hattenstein v. Lerch, 104 Pa. 454 ; Eichelberger v. Gitt, 104 Pa. 64.

It is true that in McHugh v. Schuylkill County, 67 Pa. 391, and Shisler v. Vandike, 92 Pa. 447, it is held that there can be no ratification of a forgery, this being on the ground that the ratification of a crime would be against public policy; but in both those cases the authority of Garrett v. Gonter is conceded, and the line of distinction is pointed out, it being admitted that there may be a ratification where the signing is done under a real or pretended authority.

*J. Morris Yeakle,* with him *Maxwell Stevenson,* for appellee. —Estoppel has no place in this case. The doctrine of estoppel is merely that a man is prevented from asserting the truth when his silence has been the inducement of the other party's action: Patterson v. Lytle, 11 Pa. 53; Hill v. Epley, 31 Pa. 331;

A forgery cannot be ratified. It is against public policy to ratify a crime: Shisler v. Vandike, 92 Pa. 447; McHugh v. Schuylkill Co., 67 Pa. 391; Lyon v. Phillips, 106 Pa. 66.

The case of Garrett v. Gonter, 42 Pa. 143—the only case cited by the appellant, and upon which they so mainly rely, is not in point. In that case the mortgage was signed by an agent who professed to act as agent at the time of signing, under a power of attorney which was forged. The mortgage itself was not forged. No attempt was made to imitate the signature of the mortgagor to the mortgage. It showed on its face that it was done by an agent; but it was the power of attorney that was forged. The question before the court was not whether the signature to the forged power was to be ratified. That could not have been ratified. The question was whether, altogether aside from and leaving the power of attorney out of mind, the mortgage which was signed by an agent, as agent, professing agency at the time, could be ratified by the party whom he professed to represent, after a full knowledge of all the facts.

Even if this were not the law, the evidence of plaintiff would not meet the requirements of ratification. For ratification can only be effectual where the agent at the time professes to act as an agent: 1 Am. & Eng. Ency. of Law, 431; Garrett v. Gonter, 42 Pa. 146; Shisler v. Vandike, 92 Pa. 450.

Ratification would require a new consideration. Otherwise it would be nudum pactum: Duncan v. McCullough, 4 S. & R. 486: McHugh v. Schuylkill County, 67 Pa. 396.

Ratification can only be effectual when the principal has. had a full knowledge of all the facts and circumstances attending the transaction.

The ratification of a contract necessarily implies the relation of a principal and agent, and unless the relation existed, the idea of ratification must be excluded: Pittsburg, etc., R. R. v. Gazzam, 32 Pa. 340 ; Zoebisch v. Ranch, 133 Pa. 532.

A party in order to avail himself of the acts of an agent to affect the principal must prove the agency and extent of it: Moore's Executors v. Patterson, 28 Pa. 505.

One who has only a parol authority for the purpose cannot bind his principal by affixing, in his absence, his name and seal to a bond: Gordon v. Bulkeley, 14 S. & R. 331 ; Snyder v. May, 19 Pa. 240.

OPINION BY MR. JUSTICE FELL, May 10, 1897 :

The distinction between the power to ratify acts void because of a fraud affecting individual interests only and the power to ratify acts which involve a public wrong has been carefully defined and preserved in our decisions. The right to avoid a contract on the ground of fraud is a privilege given to the injured party for his own protection, and it may be waived ; but he cannot give validity to an illegal contract. The earlier cases which held that all contracts vitiated by fraud are insusceptible of confirmation are in effect overruled by Pearsoll v. Chapin, 44 Pa. 9, and Negley v. Lindsay, 67 Pa. 217. The distinction between the cases pointed out in the opinions in Shisler v. Vandike, 92 Pa. 447, and Lyon v. Phillips, 106 Pa. 57, is this : where the transaction is contrary to good faith and the fraud affects individual interests only, ratification is allowed ; but where the fraud is of such a character as to involve a crime the adjustment of which is forbidden by public policy, the ratification of the act from which it springs is not permitted. Forgery does not admit of ratification. A forger does not act on behalf of, nor profess to represent, the person whose handwriting he counterfeits, and the subsequent adoption of the instrument cannot supply the authority which the forger did not profess to have. " A forged bond or note obviously wants the essentials of a contract because the intention is not to bring the minds of the obliger and obligee together, but to practice a fraud on both." Hare on Contracts, p. 285.

All of the assignments of error which were insisted upon at the argument relate to the instruction given to the jury that if the mortgage upon which the action was founded was a forgery there could be no ratification of it, and that no act of the defendant thereafter could make it binding upon him. There can be no doubt of the correctness of the first part of this instruction, and in view of the evidence the whole of the instruction was free from error. Magee, who committed the fraud, was the accredited agent of the building association, and represented it in the preparation of the mortgage. He may have represented the defendant in other matters, but there was not the slightest evidence of his agency for the purpose of executing the mortgage. Nor was there evidence of any act of the defendant upon which to base an equitable estoppel. The attempt to bring the case within the principle of the decision in Garrett v. Gonter, 42 Pa. 143, that a deed or contract executed by a professed agent acting under a pretended authority may be confirmed, failed for want of proof.

The judgment is affirmed.