First National Bank of Shoemakersville, Appellant,
*v.* Albright et al.

Argued November 13, 1933.

Before Trexler, P. J.,

KELLER, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*John B. Stevens,* and with him *Harry W. Lee* of *Stevens & Lee,* and *B. M. Strauss,* for appellant.

*Joseph R. Dickinson,* and with him *Dawson H. Muth* and *William E. Fisher,* for appellee.

OPINION BY PARKER, J., February 1, 1934:

This is an appeal from an order making absolute a rule to show cause why a judgment entered by confession should not be opened. The defendant alleged as a basis of his application for relief that his signature to the note authorizing the confession of judgment was forged, and this was denied in an answer by the plaintiff.

In December, 1930, Paul B. Albright, who was engaged in the insurance business with his father, J. W. Albright, presented to the plaintiff bank a judgment note for $1,800 purporting to be signed by himself and his father. The note was renewed three times and payments made on account so that on September 21, 1931, there was due to the bank the sum of $1,375. In December, on maturity of the last renewal, the son failed to renew the note or make any payments thereon and absconded. Then for the first time the bank called the attention of J. W. Albright to the nonpayment of

the note, when he promptly denied that he had signed or authorized the signing of his name to the note.

After the entry of the note depositions were taken on the rule to show cause why the judgment should not be opened, and the defendant swore that the signature was not his and that he had not authorized any one to sign his name for him. On behalf of the plaintiff, A. N. Sprenger, president and cashier of the plaintiff bank, testified that he knew the signature of the defendant and that in his opinion the note was signed in the handwriting of the defendant; that before the loan was made he called the office of J. W. Albright in a neighboring town on the telephone and when he received a response he recognized his voice and asked if the party speaking was J. W. Albright, and the party replied that it was. The witness further stated: "I said are you familiar with this transaction, this note that Paul has requested us to discount, and he said yes, let me see, how much was that made out for, I said $1,800, yes, yes he said that is alright." Thereupon the proceeds of the note were placed to the credit of Paul B. Albright in the plaintiff bank and later withdrawn by him therefrom. J. W. Albright denied that he had any such conversation or that he was the party who answered the telephone if such a conversation as has been detailed took place. The defendant also offered in evidence examples of his own signature for the purpose of having it compared with the alleged signature on the note. The lower court, after an inspection of the note, indicated in an opinion filed that such examination disclosed conditions which made it an important item of evidence in support of defendant's petition.

Observing that the only question for our determination at this time is whether there was sufficient evidence to warrant the opening of the judgment, it is clear that if nothing else had been introduced in the

case the court would have been required to open the judgment and submit the issue to a jury: Austen v. Marzolf, 294 Pa. 226, 143 A. 908; Schomaker v. Dean, 201 Pa. 439, 50 A. 923. There was not any direct evidence that the defendant actually signed the note, and the plaintiff was compelled to rely on the expert testimony of the cashier who, in order to qualify, stated only that he knew the signature of the defendant, and the alleged telephone conversation which the cashier claimed he had with the defendant. This was opposed by the prompt denial of the defendant when demand was made upon him and a like denial under oath on the taking of the testimony that he signed the note or authorized any one to sign it for him, or talked by telephone with the cashier. A comparison of the signature in question with admitted signatures of the defendant and the alleged peculiarities of the disputed signature were likewise proper questions to submit to a jury under the circumstances present here.

The plaintiff, however, relies upon certain matters which it claims precluded the defendant from setting up the forgery and cites in support of its position the case of Robb v. Penna. Co., 3 Pa. Superior Ct. 254, affirmed in 186 Pa. 456, 41 A. 49. The defendant when on the stand testified that he had in his office a rubber stamp, a facsimile of his signature, which was used exclusively for the purpose of signing endorsements on insurance policies; that this stamp was allowed to remain on his desk in the office and the son was authorized to use it exclusively for the purpose of endorsing riders on insurance policies, and that the defendant never used it for any other purpose. It was produced at the hearing and impressions were made with it. The only witness called by the plaintiff as an expert insisted that the disputed signature was in the genuine handwriting of J. W. Albright. J. W. Albright, in turn, testified that it was not his signature and was asked this question on cross-examination: "Did you

know at that time [when the witness was called into the bank] or seem to you at that time that it was a tracing? A. Well, sure it did." On the strength of this testimony the appellant predicates an argument on the assumption that the disputed signature was a rubber stamp signature made with the stamp in question and contends that the court should have said as a matter of law that the defendant was guilty of such negligence that he could not set up the defense of forgery. The difficulty with this position is that the premise is not warranted as the statement of the defendant did not amount to an admission that the signature was a rubber stamp signature. Neither could the court conclude from the testimony that such was the fact. In addition the testimony of the plaintiff's only witness on the subject was to the effect that the signature was the handwriting of the defendant. This was directly opposed to the assumption upon which appellant's argument is based. We might dispose of the case without further comment, but in view of the fact that the case must be submitted to a jury we deem it proper to make further comments upon certain questions raised by the arguments. This is a case in which it would be proper to follow a recommendation of the Supreme Court that special findings of fact should be submitted to the jury.

The note in question is a negotiable instrument notwithstanding the facts that it contains a power to confess judgment if not paid at maturity and that it waives the benefit of any law intended for the advantage or protection of the obligor: Act May 16, 1901, P. L. 194, §5 (56 PS 7); that it provides for payment of an attorney's fee in case payment shall not be made at maturity: §2 (56 PS 2); and that it bears a seal: §6 (56 PS 8). Section 23 (56 PS 28) of the Negotiable Instruments Act is as follows: "When a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly in-

operative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority." This section does not undertake to specify the acts which will have the effect of precluding an obligor from setting up a defense of forgery: Houser v. Nat. Bank of Chambersburg, 27 Pa. Superior Ct. 613. We must, therefore, have recourse to former decisions and established principles in determining how the defendant might be precluded.

"Forgery of a signature to a bill or note is a defense, available to the party whose name has been forged, even against a bona fide holder in due course, unless the party is estopped to set up such forgery, or the forgery has been ratified": 8 C. J. 762. However, it is to be noted that in Pennsylvania "forgery is a heinous crime, which cannot be ratified": Austen v. Marzolf, supra, p. 229. Ratification, as we understand the term is here used, refers to a ratification after the note has been negotiated and not to an act of the obligor prior to the negotiation of the obligation which might be construed either as an authorization of the signature, or be evidence of the genuineness of the signature. Consequently, it was competent for the plaintiff to offer evidence tending to show an approval of the transaction before negotiation.

We understand that the word "precluded" as used in the Act of 1901 is equivalent to "estopped." In the decisions of the courts and in the textbooks, the principle is many times repeated that one may be estopped from setting up a forgery. In those cases which involve a relationship in which mutual obligations exist such as that between a depositor and a bank, negligence is treated as a ground of estoppel.

This is also a principle that is recognized in the law of estoppel and is thus stated: "As supplying the element of intention to influence the conduct of another, some cases declare that a person may be estopped by culpable negligence or by negligence amounting to a breach of duty. This is an application of the general principle that when one of two innocent persons, that is, persons each guiltless of an intentional, moral wrong, must suffer a loss, it must be borne by that one of them who by his conduct has rendered the injury possible": 10 R. C. L. 695.

This principle was recognized in the case of Robb v. Penna. Co., supra, and it was held that the alleged negligence of a depositor in the care of a rubber stamp was a question for the jury and might be a bar to setting up forgery as a defense to the payment of the check. There was in that case a duty owing from each to the other. The bank undertook to honor checks upon the account and to know the signature of the depositor, but the depositor undertook to so draw his checks and execute them as not to mislead the bank. Another example is that of the maker of a note issuing a note that invited tampering with. The principle is thus stated in Zimmerman v. Rote, 75 Pa. 188, 191: "It is the duty of the maker of the note to guard not only himself but the public against frauds and alterations, by refusing to sign negotiable paper made in such a form as to admit of fraudulent practices upon them, with ease and without ready detection." We also have the example of the negligence of an owner of stock under certain conditions in endorsing it in blank in the case of Penna. R. R. Co.'s Appeal, 86 Pa. 80. "Negligence which will work an estoppel of this kind must be a proximate cause of the purchase or advancement of money by the holder of the property and must enter into the transaction itself": O'Herron v. Gray, 168 Mass. 573, 40 L. R. A. 498, 47 N. E. 429; and the party invoking the principle must be free from

negligence: Morgan v. U. S. Mtg. & Tr. Co., 208 N. Y. 218, 101 N. E. 871. The evidence produced on the application to open was meager and on the trial of the case a different situation may be presented, and it will then be for the court to determine under such evidence whether the alleged negligence of the defendant is a matter for the jury or for the court. We are all of the opinion that the court committed no error in opening the judgment.

The order of the lower court is affirmed.