# Funds for Business Growth, Inc. *v.* Maraldo, Appellant.

Argued January 8, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

reargument refused June 24, 1971.

*Howard Wallner,* for appellant.

*John M. Gallagher, Jr.,* with him *Richard, Brian, DiSanti & Hamilton,* for appellee.

OPINION BY MR. JUSTICE BARBIERI, June 1, 1971:

This is an appeal from a final order dismissing a petition to open judgment which had been entered in 1961 by confession on a warrant of attorney contained in a non-negotiable judgment note. Appellant, Angelina Maraldo, averred, and it was found as a fact by the lower court, that her signature on the note as maker or

surety was a forgery. Nevertheless, the lower court refused to open the judgment because appellant had executed a written agreement by which she ratified the forged signature on the note as her own and waived her right to petition to open the confessed judgment.

In 1961, Woodland Marble & Tile Co., Inc. (Woodland), whose principals were James F. Woodland and Louis Maraldo, sought a business loan from appellee. After investigation appellee forwarded loan documents to Woodland's accountant in which the Woodland corporation was named the borrower and the principals and their wives, sureties. Among the documents was a non-negotiable installment judgment note for $20,000. Appellant, Angelina Maraldo, the wife of Louis Maraldo, testified that she knew nothing of this loan. Bernard Granor, an officer of appellee, testified that he visited the Maraldo residence in order to determine its value as security for the loan; and the lower court stated that appellant was present on that occasion and knew about the loan.

Subsequently, Woodland defaulted on the loan and filed a bankruptcy petition. Appellee had recorded the note on January 20, 1961, immediately after its execution on January 19, 1961, so that judgment was confessed against all parties prior to any default.* In October, 1962, appellee caused a writ of execution to issue against the Maraldos' home. Angelina Maraldo's testimony is that this was when she first heard of the loan, i.e., when the premises were posted for sale by the sheriff, and this was also when she learned that

---

* Section 3-112(1)(d) (12A PS) provides that negotiability is not affected by a term in the instrument that permits confession of judgment if it is not paid when due. This has been held to mean that a note which authorizes confession of judgment at any time before or after maturity, as is the case here, is a nonnegotiable instrument. See, *Smith v. Lenchner*, 204 Pa. Superior Ct. 500, 205 A. 2d 626 (1964) and the cases cited therein.

her husband had forged her name to the note. She was, at all relevant times, a housewife with no interest in the corporation and had a severe sight handicap (which has now worsened), being unable to read because of the condition of her eyes and barely able to see people and objects. Mrs. Maraldo also has a severe hearing handicap such that she is almost totally deaf. For practical purposes, she is blind and deaf.

When appellant confronted her husband about this matter, he retained an attorney. Another attorney, asked by her husband to represent her, advised appellant that if the judgment was not paid, despite her forged signature on the note, her home would be sold and her husband would be imprisoned for forgery. While this attorney did prepare a petition to open judgment based on the forgery, it was never filed because of appellant's fear that she would lose her home and that her husband would go to jail. In addition appellant was fearful of family disgrace from her husband's threatened criminal conviction. She also felt that she had to clear him because of the economic circumstance, if he were imprisoned, that she could not work due to her impaired eyesight and hearing, and because she was 48 years of age. Counsel for appellee was aware of the forgery claim of appellant at this time. Under the influence and pressure of the family disasters envisioned by appellant she was induced to join in another agreement prepared by appellee, dated January 28, 1963, which contained the following paragraph: "8. Maraldo hereby releases and discharges Corporation [Appellee] of and from any and all claims, suits, causes of action and judgments which they now or in the future may have arising out of this or any other transaction. Maraldo hereby waives any defect or error which may appear on the face of the instrument upon which the judgment hereinabove referred to was entered, and further waives any right to petition to open or strike said judgment for any rea-

son, legal or equitable. Angelina Maraldo specifically ratifies her signature as it appears on the face of said judgment note and upon any other writing or document pertaining to this transaction."

The gist of the 1963 agreement, aside from the above, was that appellee would forego execution on the Maraldo property until after the conclusion of the bankruptcy proceedings. It further provided that the Maraldos would mortgage their property and pay over to appellee close to $10,000 and that execution might be made upon the property to obtain any funds still owing to appellee at the close of the bankruptcy proceedings. The Maraldo attorney did inform Mrs. Maraldo that she would no longer be able to claim that the signature on the judgment note was a forgery and she understood this. It was her understanding, however, that she and her husband had now paid half of the debt owing to appellee and that they would no longer be liable to appellee in any amount, and that, in any event, her house was now safe.

In November, 1968, at the close of the bankruptcy proceedings, the Maraldos were informed that there was still a deficiency on the judgment in the amount of approximately $10,000, which sum was computed by adding counsel fees and interest to the alleged unpaid debt. In February of 1969, the instant petition to open the judgment was filed which, as we have noted, was denied on the basis of ratification and waiver.

Generally, an appellate court will limit review of proceedings to open a judgment entered by confession or upon a warrant of attorney to ascertain whether the discretion of the court below was properly exercised, and will reverse only if an abuse of discretion or manifest error is shown. 9 Standard Pa. Practice 421 (1962). However, when dealing with a claimed forged signature upon a judgment note, a different rule is applied whereby the burden is put upon the holder of

the note to prove the genuineness of the signature, and if affirmative evidence of the forgery remains uncontradicted, the judgment must be opened. *Industrial Valley Bank & Trust Co. v. PlyMar Furniture and Carpet Co. Inc.*, 215 Pa. Superior Ct. 430 (1969). See also, *Yank v. Eisenberg*, 408 Pa. 36 (1962). Here, there was no question below that Angelina Maraldo's signature on the judgment note was forged, because it was so found as a fact by the trial judge. Yet, he failed to open the judgment as the rule noted above would appear to have required, apparently on the conclusion that the right to open was lost because appellant ratified the forgery by signing the 1963 agreement.

It has long been an established principle in this Commonwealth that a forgery may not be ratified since it is a crime the adjustment of which is forbidden by public policy. *Austen v. Marzolf*, 294 Pa. 226 (1928); *Henry Christian Building and Loan Assoc. v. Walton*, 181 Pa. 201 (1897); *Shisler v. Vandike*, 92 Pa. 447 (1880). The lower court's ruling to the contrary, however, was based upon the view that the rule against ratification of a forgery has been modified by the Uniform Commercial Code §3-404, 12A P.S. §3-404, our decision in *Carlson v. Sherwood*, 416 Pa. 286 (1965), and the Superior Court decision in *First National Bank of Shoemakersville v. Albright*, 111 Pa. Superior Ct. 392 (1934).

Neither of the cases relied upon as modifying this rule are apposite in the present case. *Carlson* deals with the burden of proof upon the judgment debtor: that he offer by clear, direct, precise and convincing evidence in the first instance that the signature is a forgery. Here, appellant has met that burden. In fact, the forgery testimony remains uncontradicted. *Albright* is not really concerned with ratification of a forged instrument, and also it deals with a *negotiable instrument* and the concept of estoppel within the terms of the

Negotiable Instruments Law, Act of May 16, 1901, P. L. 194, §1 et seq., 56 P.S. §11-497 (repealed). The case before us deals with a non-negotiable instrument and no decision approving ratification of such a forged instrument has ever been rendered. This is also relevant to the Uniform Commercial Code argument of appellee and the reasoning of the lower court. Although §3-404 of the Code permits ratification of forged instruments, that section is only applicable to negotiable instruments covered by Article 3.[1] See Comment 2 to §3-404, and *Redisco, Inc. v. Boose,* 13 Cumb. 68 (1962). It is thus clear that as to non-negotiable instruments, nothing has changed the law which prohibits ratification of a forgery. We think that especially is this so when one of the parties is a non-merchant. Accordingly, we conclude that the lower court was in error in its views as to the law here and, therefore, abused its discretion in refusing to open the judgment. See *Yank v. Eisenberg,* supra; *Mielcuszny et ux. v. Rosol,* 317 Pa. 91, 93 (1934).

Appellee, however, raises another ground for affirming the lower court's action. Appellee contends that appellant waived her right to petition to open the judgment after executing the 1963 agreement on the grounds of estoppel and laches. While there is no time limit on the exercise of the power of the court to open a judgment by confession, nonetheless the doctrine of laches may be applied to the opening of a judgment when the delay is unreasonably long and unexplained. *Windber Trust Co. v. Evans,* 192 Pa. Superior Ct. 417 (1960). In this case, appellant has explained the delay, her reliance on appellee's supposed promise to obtain the balance of the debt from the Woodlands and her

---

[1] Article 3 is entitled "Commercial Paper", and Section 3-102 (1) (e) (12 A P.S.) provides: "(e) 'Instrument' means a negotiable instrument".

conception as to the distribution to be made by the bankruptcy referee. It was not until late in 1968 that appellant learned that appellee sought to hold her further liable on the debt. Within two months of learning this, she filed her petition. Under such circumstances the delay was neither unreasonable nor unexplained.[2]

Appellee next contends that appellant is estopped from attacking the validity of the judgment note because by signing the ratification agreement, execution on appellant's real and personal property was delayed for five and one-half (5½) years to her benefit and to appellee's detriment. Appellee's delay, it asserts, was based on its reliance upon a misrepresentation by appellant, i.e., that she would not attack the validity of her signature on the judgment note in accordance with the 1963 ratification agreement. This argument is without merit, however, as appellee has failed to show detriment to itself as a result of the delay, thus failing to meet its burden of establishing an estoppel. *Albert v. Lehigh Coal & Nav. Co.*, 431 Pa. 600 (1968). One who asserts estoppel must establish the essentials thereof by clear, precise and unequivocal evidence. *Ham v. Gouge*, 214 Pa. Superior Ct. 423 (1969). "[I]n the absence of expressly proved fraud, there can be no estoppel based on acts or conduct of the party sought to be estopped, where they are as consistent with honest purpose and with absence of negligence as with their opposites." *In re Tallarico Estate*, 425 Pa. 280, 288 (1967). Promissory estoppel, based on an agreement, requires that the agreement be enforced if injustice can be avoided *only* by enforcement of the promise. Restatement, Contracts §90 (1932). See also, Restatement, Contracts 2d, Tentative Draft, §90 (1964). Under the facts here, sub-

---

[2] *Haverford Twp. Sch. Dist. v. Hertzog*, 314 Pa. 161 (1934) holds that where the judgment entered is invalid, laches or passage of time, however great, does not estop a person against whom the invalid judgment has been entered from attacking it.

stantial injustice can be avoided only by not enforcing appellant's promise as set forth in the 1963 agreement.[3]

The order of the lower court is reversed.

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I regret that I must dissent from this decision. I believe that a forgery can be legally ratified by a wife if done, as here, without coercion and with a full understanding of the facts and of the consequences thereof. No matter how heart-appealing appellant's claim may be, or how laudatory this Court's objective, neither can or should serve as a legal basis for a Court's decision.

[3] Although it may be argued that a confession of judgment on a warrant of attorney may be unconstitutional, *Swarb v. Lennox*, 314 F. Supp. 1091 (E.D. Pa. 1970) ; Note, *Confessions of Judgment: The Due Process Defects*, 43 Temp. L.Q. 279 (1970), we need not reach that question.