**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3797
_____

I.K., By and through his parent and education decision maker, B.K.;
*B.K.,

v.

HAVERFORD SCHOOL DISTRICT

B.K.,
Appellant
*(Pursuant to FRAP 12(a))
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-12-cv-04066)
District Judge:  Honorable Stewart Dalzell
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 19, 2014
Before:  JORDAN, COWEN and BARRY, Circuit Judges

(Opinion filed: May 21, 2014 )
_____

OPINION
_____

PER CURIAM

This case involves an action brought by a special education-eligible student, I.K., by and through his mother, B.K., against the Haverford School District (the School District ). I.K. and B.K. asserted claims under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. (IDEA), the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (ADA), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 et seq. (Section 504). For the following reasons, we will affirm the judgment of the United States District Court for the Eastern District of Pennsylvania, which held that "although no valid settlement agreement exists between the parties, the [School] District has nevertheless succeeded on its equitable claim that promissory estoppel makes B.K.'s promises to settle I.K.'s IDEA and discrimination claims enforceable under the augmented record." I.K. ex rel. B.K. v. Sch. Dist. of Haverford Twp., 961 F. Supp. 2d 674, 678 (E.D. Pa. 2013).

We have jurisdiction pursuant to 28 U.S.C. § 1291.[1] We review the District Court's findings of fact under a clearly erroneous standard, and exercise plenary review

---

[1] The School District argues that the appeal should be dismissed because B.K. lacks standing. Because B.K., who was represented by an attorney in the District Court, is proceeding pro se on appeal, she may not represent I.K. See Osei-Afriyie ex rel. Osei-Afriyie v. Med. Coll. of Pa., 937 F.2d 876, 882-83 (3d Cir. 1991) (holding that the right to proceed pro se in federal court does not give non-lawyer parents the right to represent their children in proceedings before a federal court). The School District acknowledges that B.K. may continue to pursue claims under the IDEA brought on her own behalf, Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 529 (2007) (holding that parents have "independent, enforceable rights concerning the education of their children."), but argues

over the District Court's conclusions of law. D.S. v. Bayonne Bd. of Educ., 602 F.3d 553, 564 (3d Cir. 2010).

Although the procedural history of the case is, as the District Court stated, "long and complex," the primary issue on appeal is straightforward:  whether the District Court properly determined that "B.K.'s words and deeds in 2009 and 2010 led [the School District] reasonably to believe and act as if the parties had resolved their dispute and agreed to terms and waiver/release of certain claims." I.K., 961 F. Supp. 2d at 702. Promissory estoppel is an equitable doctrine that may be invoked to enforce a promise made by one party to another when there is no enforceable agreement between those parties. See Crouse v. Cyclops Indus., 745 A.2d 606, 610 (Pa. 2000).  Under Pennsylvania law,  a party invoking promissory estoppel "must show that 1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking

that she effectively withdrew all of her IDEA claims when her attorney informed the District Court that B.K. and I.K. had moved out of Haverford School District.  We have held, however, "that a claim for compensatory education is not rendered moot by an out-of-district move, even if that move takes the child out of state." D.F. v. Collingswood Borough Bd. of Educ., 694 F.3d 488, 497-98 (3d Cir. 2012).  Here, B.K and I.K sought "an award of compensatory education to I.K. to the maximum extent allowed by law as a remedy for the School District's denial of an appropriate education[.]"  Because B.K.'s request for compensatory education survives, we conclude that we have jurisdiction over this appeal. See J.L. v. Ambridge Area Sch. Dist., 622 F. Supp. 2d 257, 276 (W.D. Pa. 2008) (holding that "J.L.'s parents have standing to pursue claims under the IDEA in their own right, and Plaintiffs are entitled to a review of the state administrative tribunal's decisions under the IDEA, including the award of compensatory education[.]").

3

action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise." Id.; see also I.K., 684 n.3 ("The parties agree that Pennsylvania law supplies the contract law principles here."). A party asserting a claim of estoppel has the burden of establishing all the essential elements. Funds for Bus. Growth, Inc. v. Woodland Marble & Tile Co., 278 A.2d 922, 926 (Pa. 1971).

The School District has demonstrated that these requirements have been met here, as evidenced by the following findings of fact, which we determine are not clearly erroneous. B.K. removed I.K. from the School District in March 2009. In June 2009, B.K. and I.K., through their former counsel, filed a due process complaint. At a meeting in July 2009, the parties orally agreed to basic settlement terms. I.K., 961 F. Supp. 2d at 695. Both parties asked the assigned hearing officer to cancel a scheduled session. Id. Over the next several months, counsel for the parties, in consultation with their clients, exchanged draft settlement agreements that outlined home-schooling, financial, and waiver/release terms. Id. at 695-96. In particular, on September 28, 2009, B.K. met with her attorney and agreed to the terms of a settlement agreement, wherein B.K. promised to release all claims against the School District in exchange for money that would be used to home-school I.K.[2] Id. at 696-97. On October 15, 2009, the School District sent B.K.'s

---

[2] This finding grew out of the District Court's decision to supplement the administrative record with testimony from B.K.'s former attorney about conversations she had with B.K. regarding the proposed settlement. To the extent that B.K. challenges the District Court's expansion of the record, we conclude that there was no abuse of discretion. See D.K. v. Abington Sch. Dist., 696 F.3d 233, 253 (3d Cir. 2012) ("A district court reviewing

4

attorney a slightly revised version of the agreement.  Id. at 695-96.  That settlement

agreement, which embodied B.K.'s promise in detail, was forwarded to B.K. on the same

day.  Id.; cf. C & K Petroleum Prod., Inc. v. Equibank, 839 F.2d 188, 192 (3d Cir. 1988)

(holding that "a broad and vague implied promise" is insufficient to satisfy the first

element of a promissory estoppels claim).  During this period, B.K. did not express any

objections to the settlement terms.  Given these facts, we conclude that B.K. promised to

settle her claims, and that she should have reasonably expected that her promise would

induce action or forbearance on the part of the School District.[3]

---

administrative IDEA decisions 'shall hear additional evidence at the request of a party,' 20 U.S.C. § 1415(i)(2)(C)(ii), but 'the question of what additional evidence to admit in an IDEA judicial review proceeding . . . should be left to the discretion of the trial court,' Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 760 (3d Cir. 1995).").  At the administrative hearing, B.K. refused to waive attorney-client privilege before or during the former attorney's testimony.  It was only after the attorney concluded her testimony and left the hearing that B.K. specifically waived the attorney-client privilege.  Therefore, according to the District Court, "B.K.'s sandbagging regarding the attorney-client privilege fundamentally impaired the administrative record."  I.K., 961 F. Supp. 2d at 691.  In addition, we agree that the attorney's testimony before the District Court was not cumulative of other evidence and was "critically useful . . . because it profoundly illuminate[d] [the] determination of whether B.K. acted so as to lead [the School District] to reasonably believe that their dispute about I.K.'s educational needs and related issues was resolved."  Id. at 692.

[3] We note that the parties continued to refine the settlement agreement after September 28, 2009.  But that does not affect our conclusion that the School District has satisfied the first requirement of a promissory estoppel claim.  Indeed, the "doctrine [of promissory estoppel] is invoked in situations where the formal requirements of contract formation have not been satisfied and where justice would be served by enforcing a promise." Carlson v. Arnot-Ogden Mem'l Hosp., 918 F.2d 411, 416 (3d Cir. 1990); see also I.K., 961 F. Supp. 2d at 702 n.21 (stating that "B.K.'s offer to contract was effectively

5

In addition, relying on B.K.'s promise to home-school I.K. in exchange for money and a release of any claims against it, the School District refrained from initiating truancy proceedings when I.K. did not report to school after March 2009. I.K., 961 F. Supp. 2d at 700. On November 16, 2009, the School District's attorney wrote to B.K.'s attorney, stating, "I am . . . concerned because [I.K.] has not attended school in the District since his mother withdrew him last spring, but [B.K.] has neither filed a home school plan for approval by the District nor signed the written Settlement Agreement to allow funding of the Special Education Trust. I appreciate hearing from you on this at your earliest convenience, so that the District can make a decision about whether it is compelled to investigate [I.K.'s] absence from school under the obligations placed upon it by the school attendance and truancy laws." A school district's "primary responsibility [is] to maintain a thorough and efficient system of public schools[,]" Filoon v. Middle Bucks Area Vocational-Tech. Sch., 634 A.2d 726, 729 n.7 (Pa. Commw. Ct. 1993), and the Secretary of Education may deny appropriations if a school district fails to comply with its obligations. See 24 Pa. Stat. § 13-1357. Therefore, the District Court properly concluded that "the [School] District imperiled state funding for its educational programs if it without ground relied upon B.K.'s representations that I.K. would be homeschooled . . . ." I.K. 961 F. Supp. 2d at 701.

withdrawn before the contract could be ratified, but not before she could be estopped from avoiding her promises.").

Finally, we conclude that injustice can be avoided only by enforcing B.K.'s promise. As the District Court persuasively explained, enforcing the promise ensures "that I.K. is finally provided with the funds from which B.K can tailor her son's educational needs[;]" it does not "work an injustice to B.K. herself . . . because her interests . . .are secondary to her son's[;]" and it "avoids the substantial injustice that would befall [the School District] as a result of its reasonable reliance on that promise." Id. at 702 (stating that "[t]o allow B.K.'s late-in-the-game change of heart to prevail over [the School District's] earnest efforts to resolve this matter – and to equip B.K. with significant funds to educate I.K. – would thwart [the School District] in its good faith effort to compromise with B.K. to resolve the IDEA claims."). Under these circumstances, we conclude that the District Court properly held that the School District established promissory estoppel.[4]

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[4] We also conclude that the District Court properly rejected B.K.'s discrimination claims on the ground that she should be estopped from avoiding the waiver and release terms of the settlement agreement. See I.K., 961 F. Supp. 2d at 703-07.